Good morning, Your Honor. I am Mr. Donaldson, the plaintiff's and the appellant's. I'd like to reserve three minutes for rebuttal, if I may. May it please the court. The district court in this case wrongly dismissed the plaintiff's negligence claim under A's, that's the California State Law case, without giving due consideration to evidence that clearly shows the defendant's negligence and how they responded to the decedent, Joseph Han, during the incident, which consequently resulted in shooting and killing him. Now, as the court knows, this is a second hour back before the plaintiff's rebuttal. The effects of the case, I think, are pretty well known and pretty clear. Mr. Han was alone in his bedroom when he was shot. He was obviously very suspicious. That information was before the officers, when they arrived. There was a call for, the family was requesting a 5150. The officers were not actually doing a 5150, but they indicated that they would do a welfare check. The family indicated that Mr. Han did have a knife in his room, but that otherwise that he hadn't hurt anyone and that it was not suicidal. When the officers arrived at his room, they, of course, they opened the door, and, of course, the court has already found that action to be reasonable. I guess what happens after that, then, I think, gives rise to the official's liability. There are the concept that some of these facts are disputed or that they're clear, that there are salient facts that were ignored by the district court, and the most critical of those being that, well, first it was clear that Mr. Han was killed, and I mentioned the unstable state. Officer Barber, who was the officer who opened the door, initially he sees that Officer Barber's in the doorway, and Mr. Han makes statements to him, including threatening statements, and, Paul, cut your throat, and, or, Paul, cut your neck, and I'll shove a gun in your throat, something along those lines. And then Mr. Han, according to Officer Barber, stands up from the couch with the knife in his hand and walks towards him. Officer Barber has the taser in one hand, a gun in the other hand. He dips the taser in the taser's port, and then the officer, according to his own testimony, stood there and disobeyed when on disputed time, and totally unmerciful and not considered by Judge Englund. The officer, instead of stepping back, instead of creating distance, following the guidelines that are testified to by Lou Ryder, our expert, CCCT, coordination, containment, communication, time, instead of creating that, Officer Barber does the opposite, closes in on Mr. Han, steps into the room, and, quote, in order to get a better shot on him, he lifts up his gun in order to shoot Mr. Han, to get a better shot on him. What he could have done, of course, and what he should have done. And this is, again, according to our police practice expert, and I don't think there's any issues as to his qualifications, is to step back and use time to his advantage. We know from what happened that after the officer stepped forward and shot Mr. Han, that Mr. Han, instead of continuing to threaten the officers, actually shut the door. Officer Barber stepped back out of the bedroom, and Mr. Han shut the door. So that's how Mr. Han continued to threaten the officers. And that's clearly what would have happened had the officers stepped back out of the room initially. But you talked about haste, and so I want to talk to you a little bit about that, because it seems like that's a significant case here. Please. The California Supreme Court explicitly stated that it sought to avoid any misleading reference to a separate personal or pre-shooting injury of duty, and then stated that the reasonableness of the officer's pre-shooting conduct should not be considered in isolation. Instead, it seems the pre-shooting conduct, which is one of several circumstances, I guess, used to assess whether the use of deadly force is unreasonable, and that the pre-shooting conduct, I think it also says, should be considered in relation to the question whether the officer's ultimate use of deadly force was reasonable. And so here, my question is, are you alleging a separate pre-shooting injury, or are you merely asserting that the officer's pre-shooting conduct and card record of the use of deadly force is unreasonable? The answer is this. We're not claiming that there's a separate spectacular duty with respect to the pre-shooting conduct that is part of the totality of the crime. Correct. And I would note that it's pretty clear that Judge Clark is pretty clear about that, and he actually ranks the distinction, the critical distinction between the state law and the negligence claim and the Fourth Amendment The Fourth Amendment claim, as we all know, the use of force is measured at the time, at the moment, the use of force is applied or used, whereas under the state law claim, the use of force is the time period, and it's much broader, and includes the pre-shooting tactics in this case. So I think that's very clear. So what we're saying is that the duty of care is breached by the officer's conduct that preceded the shooting when we evaluate the case in the totality, and I think that that's important. That distinction is important because had Mr. Hahn not closed the door and continued coming towards the officers, then I think that we might be in a different position where he could say that the pre-shooting conduct was what it was, but ultimately it would be a different case. Here, when you consider it together with the way the shooting occurred and both shootings, you have a situation where the office department could have stepped back, could have removed himself, and Mr. Hahn, as we know, would have shut the door. I'm not implying precedence on the part of the officer, but there was no reason not to do that. And then with respect to the second shooting for Officer Peterson, again, a point not addressed by the district court. And if you consider the facts of what Officer Peterson testified to and what he stated in his interview, part of the reason why he forced the door open, part of the reason why he kept it back open is because he erroneously believed that Officer Barber was in the room with Mr. Hahn when clearly he wasn't. Officer Barber had taken Mr. Hahn's brother, David Hahn, into the bathroom that's down the hallway. So tonight, Officer Peterson admitted he didn't do anything to find out where the other officer was, so apart from even not paying attention to what Officer Barber did or where he went, an attorney could find that that consideration wasn't reasonable as well and certainly do not take steps to pass the jury in a fight. For example, ask Officer Barber, where are you, are you in there, something like that. So we have that. I think one of the other issues, the court, the defendant said to Martinez, with respect to the underlying conduct, the conduct preceding the use of force, Martinez, the conduct preceding the use of force was a police pursuit, it was a vehicle chase, and that was conduct that was alleged to be negligent. And, of course, prior to the shooting that happened, that was the conclusion of that. But, of course, in that case, what the plaintiffs were pointing to was conduct that wasn't self-immunized because the police pursuit was immunized under California state law. So the conduct preceding the use of force in this community then, of course, became case for negligence on that. That's not the case here either. What we have, so one of the points that the defense alleges is that we don't have evidence that the officers breached a duty of care in the case, but we have evidence from a police practice expert, and that's evidence that is a relevant consideration by the court, should be considered by the court, and we feel that the District Court overreached and made credibility findings and reached into the jury's campaign. Do you want to reserve some time? I did. I want to reserve some time. Great. I think we have your argument at hand, if you want. Thank you. Good morning, Your Honor. This is Bruce Preet. I'm with Daphne Pelley's case. Thomas, you're in additional here for this case. You wrote the original opinion, so some of the facts are clear before you. What I heard my colleague do is basically give me another close argument and not address the question that this Court presented to the District Court, and that is, in the original summary judgment motion, the District Court, properly, as this Court has found, considered the officers' conduct under state law on the same standard as the federal courts. This Court, of course, held the federal cross-factionals dismissed. This Court then remanded the matter back to the District Court to have the District Court analyze those same indisputed facts, which are not changed, to under state law case, which the District Court did. In fact, in a 14-page opinion, I'm sure the Court has reviewed. The question really is comparing this case to Hayes and DeGroote, the underlying California case. So why don't you talk about how, in your view, those two cases are distinguishable from this one. Well, first of all, DeGroote, which is a very old case that the California Supreme Court relied on in Hayes, was much different facts. I'm sure the Court is familiar with those facts, but it was an unmarked car. Detectives came up. DeGroote had no idea who he was being confronted with. They pointed a shotgun at him. He tried to drive away, and they shot him. And the California Supreme Court, almost 50 years ago, said that could be negligent for a bunch of unarmed cops to go pointing guns at people. There may be a duty there. The question, though, in Hayes is, and for this Court, duty is a question of law under the California Supreme Court. It's a legal question. The question that plaintiffs and appellants cannot overcome is, where is the duty? I heard counsel argue, well, they should have retreated. They were already conceded, as if they're expert, that when Officer Barber first went to the door and opened the door at the request of the family, that's reasonable, that was appropriate. Then the additional contact in their expert. You know, Mr. Nissenbaum said that the district court disregarded plaintiffs' evidence vis-à-vis their expert. As we pointed out, their expert, Mr. Ryder, at every single point along the way, said the actions of the officers were reasonable. Approaching him the way they did, calm voice, opening the door, applying the taser, the first shots, all reasonable. The door slam, Sergeant Peterson, knowing he's got somebody who's been shot, isn't going to take the time to say, where's my other officer? He's got to go in and try to deal with the individual who's been shot. But we do have evidence that's been presented in the form of the police expert. The officers acted negligently in their pre-shooting conduct. Where's the duty? What duty did they breach, which is what he requires? What duty did they breach? What legal duty did they breach by conducting it the way they did? And what the case court said was, they don't have to choose the most reasonable. Their duty to act reasonably. Yes, but as long as they act within the parameters of what a reasonable officer would do. Right, but it seems like if we have to look at everything that might most favorable to the plaintiffs, if the jury credited Mr. Ryder, could a reasonable jury conclude, after looking at all of the circumstances, which would include the pre-shooting conduct, that the officers breached their duty to act reasonably? I think that's the question. I know you all have different opinions, and I want your best answer to that, and authority. But it boils down to a more distinct duty. The duty that they're arguing is the officers should have retreated. There is nothing in the law, and in fact the California Supreme Court in the Hernandez case, said officers have no duty to retreat. Which is also the same under California Appeal Code 835A. Police officers have no duty to retreat in these situations, which is their only argument. That these officers could have, should have, maybe backed off, and you might have had a different result. The question before this court, and the question raised by the Supreme Court of California these days, where is the legal duty? Did the officers breach that duty? And as this court pointed out this morning, assuming the duty, assuming the breach, what's the approximate cause of the injury was a separate injury. And that's, of course, what the federal courts have said. In order to consider the pre-shooting conduct, there has to be an actual constitutional violation that was causation of the injury. In this case, everybody agrees, the actions of Officer Barber in confronting Joseph Hahn initially were reasonable. That resulted in shooting number one, teasing number one, shooting number one. Officer Barber appropriately retreated. At that point, the door slammed. Sergeant Peterson goes in, and to check on Mr. Hahn, who's already been shot. They tease him again, which their expert says was reasonable. Both the entry was reasonable. The second teasing was reasonable. And then, even their expert says, the shooting at that point when Joseph Hahn was released, the question is reasonable. I've read the prior opinion, but I don't want to swill there with some chief judge. But did the expert believe that, did the expert testify that the officers had the duty to retreat in the pre-shooting context? He says they could have. He says it's their belief that they could have done that. He didn't say they should have, but they looked at it. He says that he believes that they could have done that. That would have been, in his opinion, a better way to have done it. But he does not cite to a duty. The next question is, did the prior judge say that the court should, or maybe it should consider the totality of the circumstances in which they used that phrase? And what you're trying to do, I mean, I don't think you're bigger than average in it, but you're really trying to take this incident and break it into separate parts. And maybe officers, and maybe that shouldn't be the law, but maybe officers should have to think about that. But was it the district judge under obligation in the prior appellate ruling to look at this as the totality of the circumstances? Absolutely. And that's what the district court did in 14 pages of opinion, went through every one of Mr. Ryder's opinions, and found there was no discredited fact underlying those. It seems that they're still being careful. Your briefing was focused on the pre-shooting conduct. And now you're focused on the duty, and I'm trying to figure out what you're focusing or arguing. Is it the duty of the totality of the circumstances or the pre-shooting conduct or post-pre-shooting conduct? Because I think you've shifted a bit here. And I agree, and the entire court has recognized this. Standard under federal law and state law is no different in the totality of the circumstances with the exception that the California Supreme Court has said there's one more factor to consider. In the totality, this court has already found that under the totality of the circumstances, not considering the pre-shooting conduct, the conduct of the officers at all levels was reasonable. It's already been decided under federal law in this court. The reason everyone is isolating, if you will, the pre-shooting conduct, is because, as what this court said the district court failed to do in the first instance because A's didn't exist at that time, this court remanded it to the district court to say, we understand your original ruling. We uphold that. But now, in light of P's, you must go back, reanalyze the same undisputed facts, and determine. I don't understand. I don't understand either. Your reference seems like a little unusual to me because we're reviewing this grant for summary judgment to know, well, at this point in time, it's the agreement now. Okay. And we can't affirm or reverse based on any ground in the record. It seems like, as you understand right now from your briefing, you were trying to contain us to the facts that had come up before on HOD 1, and that was it. Is that what you're trying to still do? Because it seems like you're saying the facts of this appeal must be limited to those whose discord is already deep and undisputed in affirming the judgment on the federal claims in HOD 1, and those compromising the record on remand and summarized by the district court is order granting summary judgment. The facts have not changed from HOD 1 to today. The facts have not improved on change, and they remain undisputed. So we look at the totality of the circumstances, so I have to do agree. I do. Right. And your focus now seems to be on this duty of the officers. It seems like there was a lot of expert testimony here that challenged whether the reasonableness, either in general or the duty of the officers, was both. And so I'm trying to figure out what your response is to that issue. And believe me, I'd rather not isolate out the pre-shooting comment that that's all he's did. Everything else is the same as the federal standard, which this court has already upheld as reasonable. The California courts, when this worked in Reynolds, has said expert opinions don't create grounds for overturning summary judgment. Anybody can get an expert to come to you and say they could have, should have, would have. Yeah, but the Supreme Court, I think, was in Brown v. Schwantz-Holler, where Jerry Long, for your argument, the expert, of course, can't create a jury question, stated specifically that the only problem with the expert's declaration was that it was insufficiently detailed. We would agree that the declaration could provide sufficient support for their claim to dispute a fact. The court went on to identify several additional deficiencies in the expert declaration. And here, the expert writer's report is pretty thorough, and it seems to identify serious effects that are particular to this case. It identifies a variety of police tactics that could have been used and that are supported by the police literature and best practices. So why isn't his report enough to create a jury question? Or what do you think he needed to add to make it enough? I think you just said it yourself, Your Honor. Their expert identifies several things the officers could have done. The question under state law is was there a legal duty, and that's a question for the court. There has to be a legal duty, and there's nowhere, Mr. Writer or anyone else, including the courts in California, who said what Mr. Writer is suggesting they could have done. There is no legal duty for them to have done. This is not a question of reasonableness under negligence. This is a question of duty, breach, and proximate cause. And that's where the dilemma comes up in trying to interpret this under a totality and a reasonableness standard. Reasonableness, Fourth Amendment, negligence, duty, breach, proximate cause, where is the legal duty? And that's for the court to decide. Well, not necessarily in the sense that in the duty and negligence cases that you can establish a standard of care by expert testimony, Your Honor. Well, I don't believe so. Not under California law. I believe that came in the government code, and Davidson v. Westminster of the California Supreme Court has said the legal duty in this government must be established statutorily. And in everything we cited to the district court, all of the undisputed facts which remain undisputed, all of Mr. Writer's opinions, are that at every point the officers acted reasonably. In nowhere, nowhere in any of his opinions does he say, okay, then, they had the option retrospectively. They could have handled it differently. But nowhere does he say they had a duty to act differently in their limited pre-treating conduct, which is the only question this court really remanded. Duty to treat federal and state is a pre-treating conduct. This court already found everything's reasonable. It seems a little unremanded. The district court reassessed what it needed to do, and it said the key question was the officers acted reasonably in their interactions with Joseph under the totality of circumstances, including their actions leading up to the use of dithy force. And then the district court's finding was that no reasonable jury could find the officers' pre-treating conduct to be unreasonable. It granted some re-judgment. You seem to have interjected a small focus on duty and trying to figure out where the district court, in its finding, ultimately it looked like it reviewed it for reasonableness based on the totality. And then how quickly the district court did that. It took the same facts, analyzed it under a reasonableness standard, and came to the conclusion that the same facts inexplicably result in a finding. I know. So will you review that to see if that is a proper ruling or whether under de novo review that should be reversed or not, and whether or not there is a genuine issue of material fact as it relates that has been created, and whether a reasonable jury would assist? In order to do that, this court would have to reverse the prior decision where those same facts were said to have been. Well, it's your authority on that. That's what I was trying to draw out from you in the beginning, because I don't know that it really matters because you say it's the same anyway than it was before, but it seems like you're trying to limit what we're able to look at. But I think Judge Thomas wrote the opinion in the last case that under the totality of the circumstances, the same ones we're looking at now, the conduct was objectively reasoned. Period. That's not the case. The only limited question now is, taking those same facts, which were reasonable under federal law, are they equally reasonable adding in this one little factor of pre-treating conduct? And the only difference in the pre-treating conduct from everything else was whether or not they should have retreated. And there's no need to have done that. And that's what this case was up to. It was all reasonable under federal law. The district court, according to this court, said you've got to go back and you can depreciate conduct. They did that to be reasonable. It has to reach the same conclusion as the prior decision. Are we going to reverse Judge Thomas in your own prior opinion? Well, I'm not sure about that part. Well, I mean, you did find it subjectively reasonable under some type of federal law as applied to 1983, for instance. Right. And the only difference now is you'd be considering the pre-treating conduct with any different results. As part of the totality of the circumstances. Right. Which is whether it had a duty to retreat, which there is no legal duty, and the result is the same. It's the same reasonable finding that this court already reached. Thank you, counsel. Thank you, Your Honor. Thank you. I think the court has identified the critical issue in the case, and that is the amount to which the pre-shooting conduct gives rise to the negligence claim. This is a factual issue for the jury to determine because Hays clearly sets forth that the duty to act reasonably exists in the pre-shooting conduct. Now, on its own, it's not a basis, it's not a separate duty, and Hays, of course, discussed why you don't want to bring it into separate duties. In fact, it reformulated the question that the defense submitted to it in order to address it as a whole. But what you're looking at in this case, and I disagree with the representations of Mr. Ryder's opinion by the defense counsel, Mr. Ryder was deeply critical, and he's not just saying he could have stepped out of the room, he's saying that he shouldn't have stepped out, that Officer Barber shouldn't have stepped out of the room. He's saying, even more critically, Mr. Ryder refers to an impressive zone of comfort, and he refers to that both with Officer Barber and with Officer Peterson. And he's referring there to each of those officers going into the room, going into the room. So what we know is that Officer Barber stepped forward into the room. That's what Mr. Ryder says is a violation of police training, of police standards. Mr. Ryder, of course, is a professional in this area, and he sets the standard of care based on his experience, based on his training, based on his qualifications. He testifies to that. So if you breach that, then in consideration with the totality of the circumstances, you can't simply look at it from the Fourth Amendment analysis and say, well, there's just this little extra factor here, how much weight can you have, which is what the LAs are doing. That's his actual question. In each case, there's a cosine weight per factor in the Fourth Amendment analysis or in the state law negligence claim. It's not like it's 10% this factor, 50% this factor, 30% that factor, whatever gets you to 100%. It's a totality. In this case, Mr. Hahn was no danger to anyone when he was alone in that room. At best, a danger to himself. But even there, we didn't have it. We didn't have evidence of that. So when Officer Barber steps forward into that room to shoot him, literally to shoot him, to get a better shot at him, it's to harm Mr. Hahn, the very person he's there to protect. When he didn't protect Officer Barber, he didn't protect himself by stepping out of that room. And that's what Mr. Ryder testified should have happened and didn't happen. And in the totality of it, that's a breach in the totality of the circumstances as his office intervened in such conduct because a jury could find that he forces that door, kicks that door back open, keeps it open, because he wrongly, negligently thinks that Officer Barber is stuck in that room. So those are, within the totality of the circumstances, evidence of negligence that a jury can and should consider, and it's a credibility question for the jury. When you look at group, group is all about officers creating the danger that they had to shoot their way out of. That's what it's all about, and that's what it is it's premised on. So those are the questions and issues in the case, and a jury could certainly credit Mr. Ryder's testimony and find for the plaintiffs that the defendants breached in its totality the duty of care that they owed to Mr. Hahn. And, of course, to the bystanders, the family who was present. One of the other questions that was raised, Mr. Bray focuses on Mr. Ryder doesn't say that there is a legal duty. Well, legal duty is a question of law, and Mr. Ryder justifies what the standards are and what should happen, what makes for reasonable conduct, what makes for unreasonable conduct. If Mr. Ryder had testified that they breached the duty, then certainly Mr. Gray's response would be, well, that's the province of the jury to determine that. You're making a legal conclusion, Mr. Ryder. Of course, he's not doing that. He's setting forth the standard of care and whether or not and in what ways the officer's conduct deviated from that standard of care. The last thing I want to say is this. The court's finding of this Fourth Amendment violation obviously is what it is. We don't disagree at this point. I know I said they were arguing the opposite view a few years back, but here we are. That finding was limited to really the moment of the shooting, the totality of the circumstances at the moment of the shooting, whether the officer could do different types of things, is far less relevant. Hayes says that proceeding conduct and whether the officers could do things differently tactically, that is a critical thing to consider in a negligence analysis. That's why Hayes exists. Otherwise, the state law would be the same as federal law on the negligence claim. It would just follow federal law, and it doesn't. So it's not a small thing. It's a very big thing, especially in this case where there is no public danger to anyone. There's no danger against the officers. Combat itself is the catalyst for the shootings and injuries. That's what happened in this case. Are there any questions? Thank you, counsel. Thank you, Mr. Chief. The case is heard. The case is there for decision.
judges: Thomas, Murguia, Baylson